IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SCOTTY BOB ESTRIDGE PLAINTIFF

v. CIVIL NO. 11-5064

MICHAEL J. ASTRUE, Commissioner
Social Security Administration DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Scotty Bob Estridge, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on October 2, 2007, alleging an inability to work since May 31, 2007, due to herniated discs at three levels. (Tr. 116-119, 121-123, 130). For DIB purposes, Plaintiff maintained insured status through June 30, 2008. (Tr. 52, 103). An administrative hearing was held on May 29, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 6-44).

By written decision dated October 14, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 54). Specifically, the ALJ found Plaintiff had the following severe impairment: degenerative disc disease of the lumber spine. However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 56). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can only occasionally perform postural activities. He can not climb ladders, ropes or scaffolds. He would need to be able to stand and stretch in place before returning to seated position on an hourly basis.

(Tr. 56). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as an interviewer/charge account clerk and an assembler. (Tr. 60).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 11, 2011. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8,9).

**II. Evidence Presented:**

At the time of the administrative hearing held before the ALJ on May 29, 2009, Plaintiff was thirty-five years of age and testified that he obtained a Bachelor's Degree. (Tr. 10). The record reflects Plaintiff's work consists of work as a groundskeeper, a cashier/checker, and a parking officer. (Tr. 36-40).

The medical evidence during the relevant time period reflects the following. On

September 4, 2007, Plaintiff entered the Siloam Springs Memorial Hospital emergency room complaining of low back pain since 1992. (Tr. 190-193). Plaintiff indicated he was not taking any medication. Plaintiff's past medical history consisted of questionable asthma. Plaintiff reported that he wanted to go to St. Francis Clinic.

On September 5, 2007, Plaintiff entered the Washington Regional Medical Center emergency room complaining of sharp, radiating low back pain. (Tr. 207-216, 244-248). Plaintiff also reported pain and tingling in his left leg. Plaintiff reported that his pain began three weeks prior to the emergency room visit, after he picked up a computer monitor. Dr. Steven Spencer diagnosed Plaintiff with sciatica, and prescribed twenty Diazepam and twenty Lortab pills. Plaintiff was instructed to perform activity as tolerated.

On September 17, 2007, Plaintiff entered the Washington Regional Medical Center emergency room complaining of back pain. (Tr. 201-206, 239-243). Treatment notes indicated Plaintiff was treated for back pain in the emergency room one and one-half weeks ago. Plaintiff reported he received a Cortizone shot and that the pain "got better" for a few days, but the pain had returned. Plaintiff reported he ran out of pain medication the previous day. Plaintiff reported his pain was exacerbated by movement. Upon examination, Dr. Spencer noted Plaintiff's back was normal to inspection without CVA tenderness. Plaintiff was noted to have normal range of motion of the lower extremity with no calf tenderness. Plaintiff had a positive straight leg test on the left. Plaintiff's gait and motor exam were normal. Dr. Spencer diagnosed Plaintiff with sciatica. Plaintiff was instructed to return after his MRI to receive the results.

On September 20, 2007, Plaintiff entered the Washington Regional Medical Center emergency room complaining of low back and left leg pain. (Tr. 194-200, 233-238). Plaintiff

reported experiencing this pain for the past twenty-one days. Plaintiff reported that he was in for test results from a previous MRI. (Tr. 195). Upon examination, Plaintiff was noted to be alert and oriented times three with normal insight and concentration. Plaintiff underwent a MRI of the lumbar spine that revealed:

> 1. Severe canal stenosis L4-L5 due to a focal herniated disc extending approximately 12 mm into the spinal canal slightly left of midline.
>
> 2. Diffuse bulge and ligamentous hypertrophy at L3-4 and no significant canal or neural foraminal narrowing.

(Tr. 200). Plaintiff was referred to neurosurgery.

On November 13, 2007, Plaintiff was seen at Northwest Arkansas Neurosurgery Clinic complaining of herniated discs. (Tr. 188). Plaintiff complained of lower back pain since May 31, 2007, when he lifted trusses at work. Plaintiff's medication consisted of Ibuprofen. Plaintiff reported that his pain had progressively worsened over the previous three and one-half months. Plaintiff reported he received a steroid injection in September of 2007 that "helped some."

On December 20, 2007, Dr. David L. Hicks, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently ten pounds; could stand and/or walk for a total of about six hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; and could push or pull unlimited, other than as shown for lift and/or carry. (Tr. 222-229). Dr. Hicks opined Plaintiff could occasionally climb, balance, stoop and crouch, but could never kneel or crawl. Dr. Hicks noted that manipulative, visual, communicative or environmental limitations were not evident. Dr. Hicks made the following additional comments:

> 33 yo alleges herniated disc at 3 levels. DLI 6/07. MER indicates c/o low back

> pain with tingling and numbness left lower extremity since 5/07. 9/07 exam notes positive SLR, normal ROM lumbar spine, normal gait, normal sensation, DTRs normal. MRI shows severe canal stenosis secondary to L4-5 DDD, diffuse bulge and ligamentous hypertrophy at L3-4. ADLs note takes care of son, cooks, mows, does laundry, trash, drives, shops, trouble with physical exertion and can walk 40-50 feet with support.
>
> Owing to MDI of lumbar DDD without loss of neuromuscular function, and considering ADLs, RFC is light with postural restrictions.

(Tr. 229). On February 14, 2008, after reviewing additional medical records, Dr. Jim Takach affirmed Dr. Hicks' December 20, 2007 assessment. (Tr. 232).

On November 18, 2008, Plaintiff was seen at the St. Francis Clinic complaining of tooth pain on both sides of his mouth. (Tr. 266). Vicki H. Moore, APN, noted Plaintiff had been referred by Dr. Holcomb's office after he had walked into Dr. Holcomb's office the previous day. Plaintiff reported that he had experienced dental pain for months. Nurse Moore noted Plaintiff also seemed to have some emotional issues. Upon examination, Plaintiff was noted to be in no acute distress. Plaintiff was diagnosed with dental pain. Plaintiff was given a voucher to see Dr. Holcomb and was told that Plaintiff should get a counseling appointment for mental concerns. Plaintiff was to return to the clinic to have his blood pressure checked the following week. Nurse Moore noted that if Plaintiff's blood pressure was still elevated, medication might be discussed.

A Clinic Note from St. Francis House dated November 20, 2008, reported that Dr. Holcomb was unable to extract Plaintiff's tooth, and that Plaintiff would need to see an oral surgeon. (Tr. 267). Nurse Moore noted that the clinic did not have a referral for an oral surgeon, but that she would call Plaintiff with the information for the Fayetteville Free Health Clinic.

On February 19, 2009, Plaintiff underwent a consultative general physical examination

performed by Dr. C.R. Magness. (Tr. 250-255). Plaintiff complained of back pain that radiated into his right lower extremity and migraine headaches. Upon examination, Dr. Magness noted Plaintiff had full range of motion in his shoulders, elbows, wrists, hands, hips, knees, and the cervical spine. Dr. Magness noted Plaintiff had zero range of motion of the lumbar spine and that Plaintiff was unable to do the straight-leg raises due to back pain. Dr. Magness noted Plaintiff had limited dorsiflexion and plantar flexion of the left ankle, and no range of motion of the right ankle. Dr. Magness noted Plaintiff had muscle weakness of the left lower extremity and Plaintiff's gait was noted as "abnormal." A limb function examination revealed Plaintiff was able to hold a pen and write; able to touch fingertips to palms; able to grip fifty percent of normal on the right, thirty percent on the left; able to oppose thumb to fingers; and able to pick up a coin. Dr. Magness noted Plaintiff was unable to walk without an assistive device; unable to walk on heel and toes; and unable to squat and arise from a squatting position. Dr. Magness diagnosed Plaintiff with bi-level degenerative disc disease, right lower extremity radiculopathy, asthma, migraine headaches, an antisocial personality disorder, and depression with questionable bipolar disorder. Dr. Magness opined Plaintiff had severe limitations with walking, lifting, carrying and sitting.

On March 23, 2009, Plaintiff underwent a mental status and psychological evaluation performed by Dr. Patricia J. Walz. (Tr. 258-). Dr. Walz noted Plaintiff drove to the evaluation "under the supervision" of his wife. Plaintiff reported that he was easily upset and that his wife thought he might be bipolar. Plaintiff reported he filed for disability due to his three herniated discs. Plaintiff also reported pain and numbness in his right leg if he stood too long. With regard to mental issues, Plaintiff reported that he had anxiety problems all of the time and that



AO72A
(Rev. 8/82)

he was irritable. Plaintiff reported experiencing anxiety attacks when he was around people. Plaintiff reported that he earned his GED and then a Bachelor's degree in elementary education. Plaintiff reported he never was hired by a school because they thought he was too "laid back and not the type that should be teaching kids." When asked about his health, Plaintiff reported he had back pain, pain in his legs, and chronic asthma. Plaintiff reported he went to the free clinic and was told he needed to be placed on blood pressure medication, but he did not go back to the clinic. Plaintiff's medications at the time of the evaluation consisted of Ibuprofen and an inhaler, which he did not use. Plaintiff reported that he did not do chores due to his back pain, but he was able to cook. Dr. Walz noted that while Plaintiff reported experiencing anxiety at Wal-Mart, Plaintiff appeared to go to Wal-Mart fairly regularly. Dr. Walz diagnosed Plaintiff with an anxiety disorder, and a passive aggressive and dependent personality disorder. Dr. Walz opined Plaintiff's GAF score was 60 to 65.

With regard to Plaintiff's adaptive functioning, Dr. Walz noted Plaintiff was able to drive; to shop independently, although he sometimes forgot what he needed; to go to church weekly and to sit through the one hour service, but had to twist and turn; to play internet games; and to watch movies or cartoons with his children. Dr. Walz noted Plaintiff's social skills were impaired in that Plaintiff was passive aggressive. Dr. Walz opined Plaintiff's intellectual functioning was in the low average range. Dr. Walz noted Plaintiff was able to sustain attention on tasks. Plaintiff was noted to persist well although he frequently gave excuses and claimed he could not understand things. Plaintiff's processing speed was noted to be average. With regard to validity Dr. Walz stated as follows:

> The Computer Assessment of Response Bias was administered. He gave



AO72A
(Rev. 8/82)

> extremely poor effort on the test. His effort was far below individuals who have sustained severe brain injuries and was in fact within the range of random responding. The summary states, "A three year old child who was simply pressing keys randomly could easily obtain such a performance. Individuals who are attempting to simulate, exaggerate, or malinger cognitive deficits may obtain this profile."

(Tr. 264).

**III. Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A),

1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

## IV. Discussion:

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant argues substantial evidence supports the ALJ's determination.

### A. Plaintiff's Impairments:

The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine. However, the ALJ found that Plaintiff's alleged mental impairments, asthma, migraine headaches and hypertension were not severe impairments. (Tr.



AO72A
(Rev. 8/82)

54).

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C .F.R. § 404.1520(c). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The Step Two requirement is only a threshold test so the claimant's burden is minimal and does not require a showing that the impairment is disabling in nature. See Brown v. Yuckert, 482 U.S. 137, 153-54 (1987). The claimant, however, has the burden of proof of showing he suffers from a medically-severe impairment at Step Two. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

With regard to Plaintiff's alleged mental impairments, including depression, anxiety, passive-aggressive disorder, dependent personality disorder and possible bi-polar disorder, it is noteworthy that Plaintiff applied for disability based on herniated discs. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (failure to allege disabling mental impairment in application is significant, even if evidence of depression is later developed). The record further revealed that Plaintiff did not seek on-going and consistent treatment for his alleged mental impairments. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).

In addressing Plaintiff's alleged mental impairments, the ALJ noted that the record contained "vague mention" of Plaintiff's alleged anxiety and depression. The ALJ pointed out that in March of 2009, Dr. Walz performed a consultative mental evaluation wherein, Dr. Walz found Plaintiff was able to sustain attention on tasks and was able to persist well. The record revealed that Dr. Walz diagnosed Plaintiff with an anxiety disorder, and a passive-aggressive



AO72A
(Rev. 8/82)

personality disorder. The ALJ also pointed out the Dr. Walz found Plaintiff gave an extremely poor effort, which Dr. Walz noted was suggestive of malingering. (Tr. 264). The ALJ also noted that Dr. Magness diagnosed Plaintiff with mental impairments. In not giving full credit to Dr. Magness's opinion regarding Plaintiff's mental capabilities, the ALJ properly noted that these diagnoses were unsupported by the record as a whole, and that these alleged impairments were outside of Dr. Magness's area of expertise. See Guilliams v. Barnhart, 393 F.3d 798, 803 (8th Cir. 2005)(Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists); 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).

After reviewing the entire evidence of record, the Court notes there is no indication that Plaintiff's alleged impairments translate into functional restrictions that would impact Plaintiff in his ability to work. Plaintiff has provided no reference in the transcript related to any such limitations caused by his alleged impairments or that these impairments have more than a "minimal effect" on his ability to work. Thus, this Court finds the ALJ properly determined Plaintiff did not meet his burden of demonstrating his alleged mental impairments were severe.

With regard to Plaintiff's alleged asthma, the record revealed that Plaintiff self-diagnosed himself with asthma, and that he treated himself on occasion with an over-the-counter inhaler. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir.1997) (concluding that, if an impairment can be controlled through treatment or medication, it cannot be considered disabling). As for Plaintiff's migraine headaches, the medical record failed to show that he sought on-going and consistent treatment for these headaches. See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (the failure to seek treatment was inconsistent with allegations of pain).

Finally, with regard to Plaintiff's alleged hypertension, the record revealed that Plaintiff was to return for a blood pressure check in 2008, and if his blood pressure was elevated, medical treatment would then be discussed. There is no indication that Plaintiff returned for a second blood pressure test or that Plaintiff was in fact diagnosed with hypertension.

After reviewing the entire evidence of record, the Court finds substantial evidence to support the ALJ's finding that Plaintiff's alleged mental impairments, asthma, migraine headaches and hypertension were not severe impairments during the time period in question.

**B. Subjective Complaints and Credibility Analysis:**

We now address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff contends that his impairments were disabling, the evidence of record does not support this conclusion.



AO72A
(Rev. 8/82)

With regard to Plaintiff's back impairment, the record revealed that Plaintiff sought treatment in September of 2007 for back pain that he originally indicated occurred after he picked up a computer monitor, but later reported and testified that it occurred when he picking up trusses while working. A MRI of Plaintiff's lumbar spine revealed severe canal stenosis at L4-L5 due to a focal herniated disc; and a diffuse bulge and ligamentous hypertrophy at L3-4, and no significant canal or neural foraminal narrowing. The record revealed that Plaintiff went to the Northwest Arkansas Neurosurgery Clinic in November of 2007; however, the record does not include a diagnosis from this clinic. The record failed to show Plaintiff reported back pain again until he was examined by Dr. Magness in February of 2009. The record showed that Plaintiff sought treatment for dental pain in November of 2008, at a free clinic; however, there is no indication that Plaintiff reported back pain at that time. The record further revealed that while Plaintiff was prescribed pain medication sporadically in late 2007, Plaintiff often reported his medication consisted of Ibuprofen. See Rankin v. Apfel, 195 F.3d 427, 430 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints). The Court finds, based on the evidence of record, that there is substantial evidence supporting the ALJ's finding that Plaintiff's back impairment was not disabling during the relevant time period. See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

While Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds.

Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). It is noteworthy to the Court that Plaintiff had sought treatment from low cost clinics, so Plaintiff knew that these clinics existed and apparently chose not to seek treatment for his back pain.

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. In a Function Report dated November 8, 2007, Plaintiff reported that he spent his day reading the Bible with his family, playing games with his wife and children, and watching television. (Tr. 140-147). Plaintiff further indicated that he was able to take care of his personal needs with some pain when reaching for his shoes; to prepare simple meals; to mow, do laundry and clean with his wife; to drive alone; and to shop for groceries and household necessities with his wife. Plaintiff also reported that he and his family attended church weekly, and that sometimes Plaintiff helped with the sound system and with locking up the church. In March of 2009, Plaintiff reported to Dr. Walz that he could drive and shop independently, but had to write what he needed on a list in order to remember things; that he attended church once a week; that he was able to play internet games; and that he watched movies and cartoons with his children. This level of activity belies Plaintiff's complaints of disabling pain and limitations and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application was supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).



AO72A
(Rev. 8/82)

Therefore, although it is clear that Plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any gainful activity. See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability). Neither the medical evidence nor the reports concerning his daily activities support Plaintiff's contention of total disability. Accordingly, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints were not totally credible.

**C. RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he



AO72A
(Rev. 8/82)

determined Plaintiff could perform work at the sedentary level with some limitations.

With regard to the opinions of Plaintiff's treating and examining physicians, the ALJ addressed the weight given to Dr. Magness. The ALJ pointed out that Dr. Magness found Plaintiff had severe restrictions with regard to walking, lifting, carrying and sitting. In deciding not to give Dr. Magness's opinion substantial weight, the ALJ noted that no x-rays or other testing was performed during the consultative evaluation, that Dr. Magness did not review any other objective medical testing results, and that the limitations set forth by Dr. Magness were not supported by the record as a whole. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)(the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). The record revealed that while Dr. Magness opined Plaintiff was unable to walk without an assistive device, the record failed to show that Plaintiff was unable to ambulate. As a matter of fact, the record revealed that in March of 2009, after Dr. Magness's evaluation, Plaintiff was able to drive and shop independently. Based on our above discussion of the medical evidence and Plaintiff's activities throughout the relevant time period, the Court finds substantial evidence of record to support the ALJ's RFC determination.

**D. Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that

Plaintiff's impairments did not preclude him from performing work as an interviewer/charge account clerk and an assembler. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V. Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff’s Complaint should be dismissed with prejudice.

DATED this 25th day of April, 2012.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE